J. S76003/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :     IN THE SUPERIOR COURT OF
                 :           PENNSYLVANIA
          v.            :
                 :

AZSION UPSHUR,            :       No. 1447 WDA 2013
                 :

          Appellant     :


Appeal from the Judgment of Sentence, August 5, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0012739-2012


BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND OLSON, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED FEBRUARY 10, 2015**

Azsion Upshur appeals from the judgment of sentence entered on August 5, 2013, following his convictions of robbery and criminal conspiracy. We affirm, finding both of appellant's claims waived.

The facts, as aptly summarized by the trial court, are as follows.

> At approximately 1:00 P.M. on November 14, 2011, Joseph Boone arrived in the 2100 block of Bentley Drive. [. . .] Several days prior, Azsion Upshur (Appellant), Anthony Jefferson, and Raymond Pendleton planned to rob Boone. They targeted Boone because they knew him to sell marijuana, and believed he would have cash on him. According to their plan, Pendleton was to lure Boone into a hallway and then call Upshur and Jefferson to complete the robbery. Pursuant to this plan, when Boone arrived in the afternoon of May 12th, Pendleton called Appellant and stayed on the phone with him as he beckoned Boone into the hallway of 2112 Bentley Drive. Once Boone was in the hallway,

Appellant put on a mask and hat, and immediately headed to the site.

When Boone saw Appellant and Jefferson running towards the hallway in masks[,] he tried to escape by running up the interior steps of the building. Pendleton left the area as Appellant and Jefferson pursued Boone up the steps. Jefferson was armed with a revolver even though a gun apparently was not part of the original plan. Appellant and Jefferson fought with Boone as they tried to rob him, dragging him back down the steps and striking his head against mailboxes inside the hallway on the first floor several times. The struggle caused Boone to wriggle out of his several shirts, both shoes, and a sock in his effort to get free. Shirtless and shoeless, Boone yelled, "take it, take it, you can have it" as he tried to run away into the courtyard. As Boone ran away[,] Jefferson followed and shot him in the hip, causing him to fall in the courtyard. Jefferson caught up to Boone, stood over him, and shot him a second time. Appellant and Jefferson fled the area together.

Several neighbors moved Boone from the courtyard to the curb so that paramedics could more easily reach him. While awaiting the medics, Pendleton approached the area where Boone lay on the sidewalk. Boone pointed at him and said, "your niggas did this to me." Boone was transported to Mercy Hospital where he underwent emergency surgeries in an attempt to save his life, but these efforts were to no avail. Boone suffered multiple blunt force injuries, head trauma, lacerations to the back of his head and face, a gunshot wound to the right abdomen and a gunshot wound to the right hip. Boone died as a result of a perforating gunshot wound of the trunk which lacerated his liver and aorta. The medical examiner was able to determine that the muzzle of the firearm was less than three feet away from Boone's body when the fatal shot was fired.

Pendleton called Appellant and Jefferson later that day about what occurred. Both Appellant and Jefferson admitted they shared approximately $200 from Boone, and Jefferson stated, "My bad bro, I didn't mean for things to go this far." In response Appellant stated, "You know how things go, bro. We got a couple dollars." Based upon interviews of Pendleton and several other witnesses, charges were filed against Appellant as noted hereinabove.

Trial court opinion, 4/28/14 at 3-6 (citations and footnote omitted).

Appellant was arrested and charged with one count of criminal homicide, two counts of criminal conspiracy, one count of violation of the Uniform Firearms Act, and one count of robbery. A joint jury trial with co-defendant Anthony Jefferson began on May 13, 2013, before the Honorable Edward J. Borkowski. At the close of the Commonwealth's case, the trial court granted a motion for judgment of acquittal for the firearms violation. On May 20, 2013, the jury acquitted appellant of homicide and conspiracy to commit homicide and convicted him of robbery and criminal conspiracy to commit robbery.

On August 5, 2013, the court sentenced appellant to an aggregate sentence of 10 to 20 years' imprisonment. A counseled notice of appeal was filed on September 4, 2013. Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

The following issues are presented in appellant's brief:

> I. Did the trial court err when it found the evidence sufficient to support the defendant's conviction for robbery?
>
> II. Was it error when [the] trial court permitted the jury to hear a prior recorded statement of a testifying codefendant which was inadmissible hearsay and parts of the tape were prejudicial to the defendant without being probative of the issue for which they were admitted?

Appellant's brief at 3.[1]

We find both of appellant's claims to be waived. At the outset, we note that the issues contained in the brief are more specific than the issues raised in the Rule 1925(b) statement. In addition to the requirement that issues be included in a Rule 1925(b) statement, our court has strictly upheld the specificity requirements of Rule 1925(b). In **Commonwealth v. Lemon**, 804 A.2d 34, 37 (Pa.Super. 2002), we held that an appellant, who appealed on an insufficiency of the evidence claim, did not meet the requirements of Rule 1925(b) where the appellant's statement merely stated that "[t]he verdict of the jury was against the evidence" and "[t]he verdict was against the law."

In his Rule 1925(a) opinion, Judge Borkowski found appellant's sufficiency claim waived for lack of specificity as appellant failed to assert the elements upon which he bases the claim of lack of sufficiency of evidence. In point of fact, the argument presented in his brief does not aver

---

[1] The body of appellant's brief also challenges the conviction for conspiracy.

that a specific element of the crimes was not satisfied. Rather, appellant argues that while he was present at the scene of the crime, the Commonwealth failed to prove his participation; this specific argument could not be gleaned from appellant's boilerplate Rule 1925(b) statement. *See Commonwealth v. Thompson*, 778 A.2d 1215, 1223-1224 (Pa.Super. 2001) (holding that "a Pa.R.A.P. 1925(b) statement which is too vague to allow the court to identify the precise issue raised on appeal is equivalent to no statement at all," resulting in waiver). Thus, we agree that appellant's sufficiency issue is waived.

Even if not deemed waived, we would find the sufficiency claim presented in his brief meritless. Our review of the record confirms that the Commonwealth presented more than sufficient evidence which established appellant's participation and complicity in the crime of robbery with his co-conspirator. We would affirm based on the analysis provided in the trial court's opinion. (Trial court opinion, 4/28/14 at 7 n.6.)

Appellant's second issue is also waived, but on different grounds. Appellant argues that the trial court erred in admitting into evidence the tape recorded statement provided to the police by testifying witness Pendleton. Following review of the notes of testimony, we agree with the Commonwealth that appellant did not object to the recorded statement being played for the jury. Rather, co-defendant Jefferson's counsel, Krisha Weyandt, Esq., objected to the recorded statement and, at a sidebar,

offered her reasons why. (Notes of testimony, 5/13-20/13 at 295-297.) The record reflects appellant's attorney remained silent; defense counsel did not himself object nor did he join in co-defendant's request.

We have long held that "[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." ***Commonwealth v. Pearson***, 685 A.2d 551, 555 (Pa.Super. 1996), citing Pa.R.A.P. 302(a); ***Commonwealth v. Burkholder***, 595 A.2d 59 (Pa. 1991). When a co-defendant preserves an issue by objecting, the defendant waives the issue unless he joins the objection. ***Commonwealth v. Woods***, 418 A.2d 1346, 1352 (Pa.Super. 2008).

Appellant cannot rely on an objection by his co-defendant to preserve a claim for appeal, even if that objection had been -- but in this case was not -- identical to what he raises now.[2] ***Commonwealth v. Cannady***, 590 A.2d 356, 362 (Pa.Super. 1991); ***Woods***, ***supra***. Thus, this issue is waived for purposes of appeal.

Judgment of sentence affirmed.

---

[2] In addition to appellant claiming the recorded statement is inconsistent, he also argues that the statement is more prejudicial than probative; the

J. S76003/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2015

---

prejudicial versus probative nature of the recording was not argued at sidebar. (Appellant's brief at 16.)



IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,        CRIMINAL DIVISION

APPELLEE                             CC NO.: 201212739

V.

AZSION UPSHUR,

APPELLANT.

OPINION

BORKOWSKI, J.

PROCEDURAL HISTORY

Appellant, Azsion Upshur, was charged by criminal information (201212739) with one count of criminal homicide,[1] one count of robbery,[2] one count of carrying a firearm without a license,[3] and one count of criminal conspiracy.[4]

Appellant proceeded to a jury trial on May 13-20, 2013, at the conclusion of which Appellant was found not guilty of criminal homicide; he was found guilty of robbery and criminal conspiracy.

---

[1] 18 Pa. C.S. § 2501(a).
[2] 18 Pa. C.S. § 3701(a)(1)(i) or (ii).
[3] 18 Pa. C.S. § 6106. This count was dismissed pursuant to Appellant's Motion for Judgment of Acquittal.
[4] 18 Pa. C.S. § 903(a)(1).

2

On August 5, 2013, Appellant was sentenced by the Trial Court to the following:

Count two: robbery – five years six months to eleven years incarceration;

Count four: conspiracy – four years six months to nine years incarceration to be served consecutive to the period of incarceration imposed at count two.

Thus, the aggregate sentence was ten to twenty years incarceration.

On September 4, 2013, Appellant filed a notice of appeal, and this Trial Court opinion follows.

## STATEMENT OF ERRORS ON APPEAL

Appellant's claims are set forth below exactly as Appellant presented them.

a. Defendant believes, and therefore avers, that the evidence presented at trial was insufficient as a matter of law to convict him of the crimes charged. Thus, Defendant moved this Honorable Court to vacate the judgment of sentence and discharge Defendant.

b. At trial, the Commonwealth moved to admit Exhibit 103 which was a recording of Co-Defendant Pendleton's confession to police. Within said recording, Co-Defendant Pendleton implicated Defendant as a co-conspirator to the above-mentioned offenses. Defendant believes and therefore avers that admission of Commonwealth's exhibit number 103 was in error and unfairly prejudiced Defendant. Thus, Defendant moves this Honorable Court to vacate judgment of sentence and order a new trial at the above-entitled matter.

## FINDINGS OF FACT

At approximately 1:00 P.M. on November 14, 2011, Joseph Boone arrived in the 2100 block of Bentley Drive, a housing project in the Hill District of the city

3



of Pittsburgh, Allegheny County, and began conversing with friends. (T.T. 77, 85, 195-196).[5] Several days prior, Azsion Upshur (Appellant), Anthony Jefferson, and Raymond Pendleton planned to rob Boone. They targeted Boone because they knew him to sell marijuana, and believed he would have cash on him. (T.T. 127, 192, 257, 259, 262, 302, 463). According to their plan, Pendleton was to lure Boone into a hallway and then call Upshur and Jefferson to complete the robbery. Pursuant to this plan, when Boone arrived in the afternoon of May 12th, Pendleton called Appellant and stayed on the phone with him as he beckoned Boone into the hallway of 2112 Bentley Drive. Once Boone was in the hallway, Appellant put on a mask and hat, and immediately headed to the site. (T.T. 141, 143, 196, 198, 203, 262, 264, 268, 303, 318-319).

When Boone saw Appellant and Jefferson running towards the hallway in masks he tried to escape by running up the interior steps of the building. Pendleton left the area as Appellant and Jefferson pursued Boone up the steps. Jefferson was armed with a revolver even though a gun apparently was not part of the original plan. (T.T. 264-269, 304-306, 322). Appellant and Jefferson fought with Boone as they tried to rob him, dragging him back down the steps and striking his head against mailboxes inside the hallway on the first floor several times. The struggle caused Boone to wriggle out of his several shirts, both shoes, and a sock in his

---

[5] The designation "T.T." followed by numerals refers to Trial Transcript, May 13-20, 2013.

effort to get free. (T.T. 181-182, 225, 235, 238-339). Shirtless and shoeless, Boone yelled, "take it, take it, you can have it" as he tried to run away into the courtyard. (T.T. 222-223, 324-325). As Boone ran away Jefferson followed and shot him in the hip, causing him to fall in the courtyard. Jefferson caught up to Boone, stood over him, and shot him a second time. (T.T. 87, 223, 325-327). Appellant and Jefferson fled the area together. (T.T. 91, 266, 307, 327).

Several neighbors moved Boone from the courtyard to the curb so that paramedics could more easily reach him. (T.T. 223, 239). While awaiting the medics, Pendleton approached the area where Boone lay on the sidewalk. Boone pointed at him and said, "your niggas did this to me." (T.T. 202, 266, 308). Boone was transported to Mercy Hospital where he underwent emergency surgeries in an attempt to save his life, but these efforts were to no avail. (T.T. 92, 101-102). Boone suffered multiple blunt force injuries, head trauma, lacerations to the back of his head and face, a gunshot wound to the right abdomen and a gunshot wound to the right hip. (T.T. 101-102). Boone died as a result of a perforating gunshot wound of the trunk which lacerated his liver and aorta. (T.T. 107, 116). The medical examiner was able to determine that the muzzle of the firearm was less than three feet away from Boone's body when the fatal shot was fired. (T.T. 109-111).

5

Pendleton called Appellant and Jefferson later that day about what occurred. Both Appellant and Jefferson admitted they shared approximately $200 from Boone, and Jefferson stated, "My bad bro, I didn't mean for things to go this far." (T.T. 269, 309-310). In response Appellant stated, "You know how things go, bro. We got a couple dollars." (T.T. 269, 310). Based upon interviews of Pendleton and several other witnesses, charges were filed against Appellant as noted hereinabove.

## DISCUSSION

### I.

Appellant alleges in his first claim that the evidence was insufficient to convict him of the crimes charged. Appellant does not specify which elements of the two charges he is challenging. Given the lack of specificity engendered by this claim the Trial Court cannot address it. In this regard the Pennsylvania Superior Court has stated:

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. The instant 1925(b) statement simply does not specify the allegedly unproven elements. Therefore, the sufficiency issue is waived.

*Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa. Super. 2008) (citations and quotations omitted).



Appellant's claim is waived.[6]

## II.

Appellant's second claim alleges that the admission of Pendleton's recorded statement was in error based on the argument that it unfairly prejudiced Appellant. This claim is without merit.

The admission of a non-testifying codefendant's statement that implicates the defendant at a joint trial constitutes a violation of the Confrontation Clause. However, this aspect of the Confrontation Clause is not implicated in Appellant's case. *Commonwealth v. Housman*, 986 A.2d 822, 835-836 (Pa. 2009) (*Bruton* rule not implicated where codefendant takes the stand and is subjected to full and fair cross examination). Pendleton conspired with Appellant and Jefferson to rob Boone, but Pendleton was tried separately and testified at Appellant's trial as a

---

[6] Even if the Superior Court was to address Appellant's claim, it is clear that the evidence was sufficient to establish the crimes of robbery and conspiracy, and Appellant's claim is without merit. Specifically, the evidence included: (1) the testimony of co-actor Raymond Pendleton; (2) testimony of Sebrina Davis who observed Appellant preparing for the robbery and which corroborated Pendleton's testimony; (3) identification testimony of an eyewitness who saw Appellant fleeing the scene with Jefferson, both of whom were masked; and (4) testimony from an eyewitness about the fight during the robbery. (T.T. 132-145, 198-200, 210, 222, 259-266). *See Commonwealth v. Spencer*, 639 A.2d 820, 822-824 (Pa. Super. 1994) (evidence sufficient to sustain convictions of robbery and criminal conspiracy where eyewitness identified defendant as masked robber, and this identification was corroborated by the testimony of defendant's accomplice); *Commonwealth v. Smith*, 396 A.2d 744, 748 (Pa. Super. 1978) (evidence sufficient to sustain conviction of robbery where seven eyewitnesses identified defendant, even though defendant testified otherwise). *See also Commonwealth v. Brown*, 52 A.3d 1139, 1171 (Pa. 2012) (evidence sufficient to sustain murder conviction based on repudiated out-of-court statements).

7

Commonwealth witness pursuant to a plea agreement.[7] However, once Pendleton took the stand he recanted his previous account of the robbery wherein he implicated Appellant. The prosecution requested and the Trial Court granted the request to introduce Pendleton's recorded statement of events as a prior inconsistent statement. (T.T. 297). Additionally, the Trial Court permitted the prosecution to treat Pendleton as a hostile witness, and he was subjected to vigorous examination by the Commonwealth regarding his previously recorded statement of events. (T.T. 258-274, 277-278). While neither counsel for Appellant nor Jefferson asked Pendleton any questions, he was available for cross-examination. (T.T. 278).

Since the co-defendant (Pendleton) actually testified, the Confrontation Clause was not implicated, and the admission of the statement is reviewed pursuant to Pa. R.E. 803.1(1) (inconsistent statement of witness). *See also Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986) (holding that a prior inconsistent statement of a non-party witness is admissible as substantive evidence as long as it is made under highly reliable circumstances and the witness is available for cross-examination at

---

[7] Pendleton was charged at criminal information (CC 201212738). Pendleton's truthful testimony at Appellant's trial was a condition of the plea offer from the Commonwealth, scheduled for court after Appellant's trial. However, once Pendleton recanted his earlier statement the Commonwealth withdrew the original plea offer. Pendleton pled guilty on November 20, 2013, to third degree murder, conspiracy, and robbery, and was sentenced to an aggregate term of imprisonment of twenty-two years six months to fifty years.

8

trial). Here, the Trial Court considered Pendleton's tape recorded statement and the circumstances surrounding it, and found it admissible:

> The Court finds in this instance it's admissible for two purposes: One is not only its content but his demeanor given his representation that he was under duress or forced to make these statements. It rebuts that notion. Especially if accurate at the very end of the statement where he states that he hasn't been threatened or forced to do anything. Secondly, the Court believes that under the letter and spirit of the prior inconsistent statement, [hearsay exceptions] -- The prior inconsistent statement is [substantive] evidence, Brady, its progeny, as well as the Rules of Evidence itself that the jury is entitled and should hear exactly what he said on that prior in the recorded statement. So over your objection it will be admitted.

(T.T. 297).

As such, Appellant was not unfairly prejudiced by the admission of Pendleton's statement and the Trial Court did not err in admitting it as a prior inconsistent statement. *See Brown*, 52 A.3d at 1171 (written statements adopted by witnesses but recanted at trial were admissible as prior inconsistent statements where witnesses were available for cross examination and admitted they signed the statements); *Commonwealth v. Wilson*, 707 A.2d 1114, 1118 (Pa. 1998) (contemporaneous electronic audio recording satisfies requisite level of reliability such that it may be admitted as substantive evidence as a prior inconsistent statement).

Appellant's claim is without merit.

9

23

## CONCLUSION

Based upon the foregoing, the judgment of sentence imposed by this Court should be affirmed.

By the Court,

DATE: _____1·29·14_____

_____Edward J. Borkowski, J._____

Edward J. Borkowski