722 A.2d 1014

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edwin Rios ROMERO, Appellant.**

Supreme Court of Pennsylvania.

Argued April 29, 1998.

Decided Jan. 5, 1999.

Reargument Denied Feb. 18, 1999.

Daylin B. Leach, Allentown, E. Romero.

Theodore R. Racines, Allentown, for Com.

Robert A. Graci, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NIGRO, Justice.

On March 19, 1996, a jury found Appellant Edwin Rios Romero guilty of the first degree murder of David Bolasky and related charges after a joint trial with co-defendant, George Lopez. Following a sentencing hearing, the jury returned a verdict of death against Appellant after finding

four aggravating factors and no mitigating circumstances.[1] On April 17, 1996, the trial court formally imposed the death sentence. This direct appeal followed.[2] For the reasons presented herein, we affirm the judgment of sentence.

For purposes of this appeal, the record below establishes the following relevant facts. On January 3, 1995, David Bolasky, an Allentown architect, went to an Allentown apartment building which he owned in order to collect rent from his tenants. Mr. Bolasky was robbed and killed in the third floor apartment. His body was found on January 6, 1995, hog-tied and wrapped in bed sheets, in the woods along a secluded road in Allentown. Several weeks after the murder, the tenant of the third floor apartment, Miguel Moreno, made statements to the police implicating himself, George Lopez, George Barbosa and Appellant in the robbery and murder of Mr. Bolasky.

At trial, Moreno testified that he, Appellant, George Lopez and Barbosa devised a plan to rob and murder Mr. Bolasky, who was Moreno's landlord. Under the pretense that Moreno had rent money for Mr. Bolasky, Moreno brought Mr. Bolasky to his third floor apartment, where Appellant, Lopez and Barbosa were waiting for him. Moreno testified that he then left the apartment, at which time Mr. Bolasky was killed. A short time later, Moreno observed Appellant and Barbosa carrying Mr. Bolasky's body, tied and wrapped in bed sheets, down the stairs and placing the body in Mr. Bolasky's van. He testified that Lopez, Barbosa and Appellant then drove off and he went to clean up his apartment.

1. The jury found the following aggravating circumstances: 1) the victim was killed to prevent his testimony against the defendant, 42 Pa.C.S. § 9711(d)(5); 2) the killing was committed in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); 3) the defendant has a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. §9711(d)(9) and 4) the defendant has been convicted of a voluntary manslaughter committed before this offense, 42 Pa.C.S. § 9711(d)(12).

2. Appellant chose to forego filing post-sentence motions with the trial court, and instead, appealed his death sentence directly to this Court. Pursuant to 42 Pa.C.S. § 9711(h), this Court has automatic jurisdiction to review the trial court's judgment of a sentence of death.

George Barbosa was also called as a Commonwealth witness. Prior to Appellant's trial, Barbosa had confessed to his role in the murder in statements made to Captain Anthony Bucarey of the Somerset County Prosecutor's Office. The confession was tape recorded by Captain Bucarey. In his confession, Barbosa also implicated Appellant, Lopez and Moreno in the planning and execution of Mr. Bolasky's murder. Barbosa specifically indicated that he and Appellant hid in the bathroom while Moreno brought Mr. Bolasky to the third floor apartment. According to Barbosa's statement, once Mr. Bolasky was inside, Appellant struck his head with a .22 pistol. Barbosa admitted that he attempted to break Mr. Bolasky's neck with a string. When this failed, however, Barbosa stated that he then put a towel around Mr. Bolasky's neck and took turns with Appellant and Lopez tightening the towel around his neck until he was dead. Barbosa stated that he and Appellant then wrapped Mr. Bolasky's body in bed sheets, carried it down the stairs, and placed the body in Mr. Bolasky's van. He, Lopez and Barbosa then drove to a desolate area of Lehigh County, dumped Mr. Bolasky's body and abandoned the van. Barbosa pled guilty and received a life sentence.

On the witness stand at trial, Barbosa testified that he was previously interviewed by Captain Bucarey and that he had told him that there were other people involved in the robbery and murder of Mr. Bolasky. However, while Barbosa did testify about the involvement of George Lopez and Moreno in the killing of Mr. Bolasky, he excluded any reference to Appellant's involvement and further refused to answer questions specifically regarding Appellant's involvement. In light of Barbosa's refusal to testify against Appellant, the Commonwealth was allowed, over defense objections, to call Captain Bucarey to the stand to read Barbosa's transcribed statements from the tape-recorded interview which explicitly implicated Appellant in the murder.

Also at trial, Daniel Lopez, Appellant's cellmate in Lehigh County Prison, testified that Appellant had admitted his involvement in the robbery and murder of Mr. Bolasky to him

during his incarceration. Daniel Lopez recounted that Appellant told him that he had gone to Moreno's apartment and hid in the bathroom with another individual while they waited for Mr. Bolasky to arrive. Once Mr. Bolasky arrived, Appellant told Daniel Lopez that they took approximately $300.00 in cash that Mr. Bolasky was carrying. Mr. Bolasky was then struck in the head with a gun and strangled by placing and twisting a towel around his neck. According to Daniel Lopez's testimony, however, Appellant told him that he "did not agree with what was happening there." N.T., March 12, 1996, at 163. After Mr. Bolasky was dead, the conspirators searched him for additional valuables. Daniel Lopez further testified that Appellant reported to him that they then wrapped Mr. Bolasky's body in bed sheets and he and another carried the body down the stairs to Mr. Bolasky's van. Appellant told Daniel Lopez that he and the others then took the van and dumped Mr. Bolasky's body.

In his single claim of error presented in this appeal, Appellant argues that the trial court erred in allowing Barbosa's prior statements from his interview with Captain Bucarey to be read into evidence because Barbosa was unavailable to be cross-examined on those prior statements. In rejecting Appellant's argument, the trial court found that the statements were properly admissible as substantive evidence under *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), and its progeny. Although we agree with Appellant that it was error for the trial court to admit Barbosa's prior statements against him, we find that such error was harmless. Accordingly, we affirm Appellant's judgment of sentence. *See Commonwealth v. Shaw*, 494 Pa. 364, 368 n. 1, 431 A.2d 897, 899 n. 1 (1981) (this Court may affirm decision of trial court if result is correct on any ground without regard to grounds which trial court itself relied upon).

In *Brady*, this Court held that the prior inconsistent statement of a non-party witness can be introduced as substantive evidence as long as 1) it is made under highly reliable circumstances and 2) the declarant is available for cross-examination at trial. *Brady* at 133, 507 A.2d at 71. The

Court explained that hearsay concerns are virtually non-existent where an out-of-court declarant is a witness in a judicial proceeding. *Id.* at 130, 507 A.2d at 69. Appellant does not dispute that the first prong of *Brady* is satisfied. Barbosa's prior statement was tape-recorded and was therefore made under reliable circumstances. *See Commonwealth v. Wilson,* 550 Pa. 518, 707 A.2d 1114 (1998) (for purposes of *Brady,* verbatim account of prior inconsistent statement that is tape-recorded is made under highly reliable circumstances). In terms of the second prong, the trial court found that Barbosa, despite his refusal to testify either about his prior confession as it related to Appellant or about Appellant's involvement in the murder, was available for cross-examination because he had taken the stand at trial. Thus, the trial court found that his prior inconsistent statements were admissible under *Brady.* We disagree.

This Court's analysis in *Brady* indicates that a prior inconsistent statement is not admissible as substantive evidence unless the declarant is not only available for cross-examination, but more pointedly, is available for cross-examination concerning the prior inconsistent statement at issue. By having the declarant available to explain the discrepancies between his prior inconsistent statement and his testimony at trial to the jury, the danger that the prior inconsistent statement is too unreliable no longer exists. The *Brady* Court explained:

> The availability of cross-examination at trial also assures a meaningful opportunity for the trier of fact to observe the declarant who has been called upon and sworn as a witness and *questioned as to the discrepancy between the prior statement and the direct testimony.* The trier of fact may bring to bear his or her sensory observations, experience, common sense and logic upon the witness to *assess credibility and to determine the truth and accuracy of both the out-of-court declarations and the in-court testimony.*

*Brady* at 129, 507 A.2d at 69 (emphasis added). In finding that the declarant's prior inconsistent statement in *Brady* was admissible as substantive evidence, this Court then stated:

Moreover, and more importantly, the declarant testified at trial and was *extensively questioned by both the prosecutor and defense counsel as to the respective validity of each statement and as to the discrepancy between them.* The jury had more than adequate opportunity to observe the witness' demeanor, hear her testimony and explanations and assess her credibility.

*Id.* at 133, 507 A.2d at 71 (emphasis added). *See also Commonwealth v. Wilson,* 550 Pa. at 522, 707 A.2d at 1116 (*Brady* held that prior inconsistent statement was properly admitted as substantive evidence when it was rendered under highly reliable circumstances and the witness was subject to examination as to the validity of each statement). This safeguard was simply not available to Appellant under the circumstances of this case. On the stand at trial, Barbosa explicitly and repetitively refused to answer questions about the prior statement as it related to Appellant, even after he was held in contempt of court.[3] In effect, Appellant was never given any meaningful opportunity to cross-examine Barbosa on the veracity of his custodial statement which implicated Appellant in the murder. Thus, we agree with Appellant that Barbosa, while present to testify at trial, was simply not available for

3. Specifically, when asked about Appellant's involvement, Barbosa answered as follows:

Q: The involvement of Edwin Rios Romero in the murder of David Bolasky, what did you tell Mr. Bucarey?

A: I don't expect to answer any question that has to do with the involvement of Mr. Romero.

N.T., March 15, 1996, at 56. *See also id.* at 58–59 (again refusing to testify about Appellant's involvement or the prior statement implicating Appellant). After Barbosa consulted with his attorney, Barbosa's attorney stated to the court:

The problem, [Barbosa] is not going to testify against Romero. Any question that's going to be asked about Romero, he just told me specifically that he is not going to say anything or answer anything concerning Mr. Romero. He doesn't have to worry about contempt of court. I'm sorry, your Honor. I mean you can't get anything worse from this court. He has no fear of punishment and he will not testify and he has his own reasons not to do that … I spoke with my client and he made it very clear on that, he is not going to say anything and he's not going to make any statement against Mr. Romero or answer any questions against Mr. Romero.

*Id.* at 63–64.

examination about his prior inconsistent statement as it related to Appellant. Accordingly, under the circumstances of this case, we find that the trial court erred in allowing the statement in as substantive evidence under *Brady*.

█ In addition to violating the mandate of *Brady*, Appellant correctly maintains that the admission of Barbosa's out-of-court statement violated his confrontation rights. Evidence admitted under a well-recognized exception to the hearsay rule and supported by sufficient indicia of reliability does not raise confrontation problems. *Commonwealth v. Ransom*, 446 Pa. 457, 461, 288 A.2d 762, 764 (1972). However, as in this case, where the evidence at issue does not satisfy an exception to the hearsay rule,[4] confrontation rights are implicated. *Id.* at 464, 288 A.2d at 765. *See also Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)(when the prosecution seeks to introduce hearsay evidence which is not admissible under any firmly-rooted exception to the hearsay rule, it must show that the evidence has sufficient indicia of reliability to withstand scrutiny under the Confrontation Clause).

A similar claim was addressed in *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). In *Douglas*, the defendant's accomplice, who had been tried previously, was called by the state to testify at the defendant's trial. When the accomplice refused to testify on Fifth Amendment grounds, the state was permitted to read the accomplice's custodial confession, which expressly inculpated the defendant, to the jury during cross-examination. The state then called three police officers to identify the document as the custodial confession made and signed by the accomplice. In reviewing the defendant's conviction, the United States Supreme Court found that the indirect admission of the accomplice's out-of-court inculpatory statement violated the defendant's confrontation rights because the defendant had been unable to cross-examine the accomplice as to its truth. *Id.* at 419, 85 S.Ct. at 1077. The Court further stated that the opportunity to cross-examine the police officers was not adequate to redress the

4. The Commonwealth argues only that Barbosa's statement was admissible pursuant to *Brady*.

14

denial of the defendant's confrontation rights since "[that] evidence tended to show only that [the accomplice] made the confession and cross-examination of [the officers] as to its genuineness could not substitute for cross-examination of [the accomplice] to test the truth of the statement itself." *Id.* at 420, 85 S.Ct. at 1077; *see also Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986)(*Douglas* is premised on the understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating others, the accusation is presumptively suspect and must be subjected to scrutiny of cross-examination).

Like the accomplice in *Douglas,* Barbosa refused to answer questions regarding the truth of his custodial statement as it related to Appellant's involvement in the murder of Mr. Bolasky. Thus, under the rationale of *Douglas,* it was error to admit Barbosa's extrajudicial statement, through the testimony of Captain Bucarey, as substantive evidence against Appellant. *See also Commonwealth v. McDowell,* 460 Pa. 474, 333 A.2d 872 (1975) (police officer's reading of non-testifying accomplice's confession, which explicitly implicated defendant, was inadmissible hearsay and violated defendant's right of confrontation); *Commonwealth v. Ransom,* 446 Pa. 457, 288 A.2d 762 (1972) (admission, through testimony of police officer, of accomplices' custodial statements implicating defendant, where accomplices were tried separately from defendant and did not testify at defendant's trial, violated defendant's confrontation rights under *Douglas* ); *U.S. v. Gomez–Lemos,* 939 F.2d 326 (6 th Cir.1990) (introduction of co-defendant's prior testimony implicating defendant violated defendant's right of confrontation where co-defendant, who pled guilty prior to defendant's trial, refused to testify about defendant's involvement in crime on Fifth Amendment grounds).[5]

5.  This conclusion is consistent with the principles underlying the United States Supreme Court's decision in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which held that a defendant's confrontation rights are violated where a non-testifying co-defendant's out-of-court statement expressly implicating the defendant is introduced at their joint trial. Just as the reliability of the co-

■ While we find that the admission of Barbosa's out-of-court statements implicating Appellant in the murder was erroneous, we nonetheless conclude that such error was harmless under the circumstances of this case. *See Commonwealth v. Bond,* 539 Pa. 299, 312, 652 A.2d 308, 314 (1995) (every infringement of defendant's right of confrontation does not constitute reversible error and improper admission of non-testifying co-defendant's statement may constitute harmless error). In order for an error to be deemed harmless, an appellate court must determine that the error could not have contributed to the verdict. *Commonwealth v. Story,* 476 Pa. 391, 409, 383 A.2d 155, 164 (1978). Under this standard, this Court has considered an error to be harmless where the improperly admitted evidence is merely cumulative of substantially similar, properly admitted evidence. *Commonwealth v. Foy,* 531 Pa. 322, 327, 612 A.2d 1349, 1352 (1992).

Here, we find that the evidence of Appellant's involvement in the murder that was extracted from the erroneous admission of Barbosa's statements was merely cumulative of other, properly admitted evidence indicating his guilt. Moreno testified that when he brought Mr. Bolasky to his third floor apartment, George Lopez, Barbosa and Appellant, as planned, were in the apartment, waiting for Mr. Bolasky's arrival. A short time later, Moreno then saw Barbosa and Appellant carrying Mr. Bolasky's body, wrapped in bed sheets, down from his apartment. Moreover, Daniel Lopez, Appellant's cellmate, testified that Appellant had confessed to him that he was waiting for Mr. Bolasky in Moreno's apartment with others and that, once he arrived, Mr. Bolasky was assaulted, robbed and strangled by ligature. Given both Moreno's and Daniel Lopez's properly admitted testimony, which also clearly

defendant's out-of-court statement cannot be tested when the co-defendant does not testify, the reliability of Barbosa's out-of-court statement implicating Appellant could not be tested at trial where Barbosa refused to testify about Appellant's involvement in the crime. It would be inconsistent, illogical and fundamentally unfair to allow the Commonwealth to introduce an out-of-court inculpatory statement of a non-testifying co-conspirator who is no longer a co-defendant, where the admission of the same statement of a non-testifying co-conspirator who is tried jointly with the defendant is prohibited.

inculpated Appellant in the planning and execution of the robbery and murder of Mr. Bolasky, the error in admitting Barbosa's statements was harmless.[6] *See Commonwealth v. Washington,* 547 Pa. 550, 556, 692 A.2d 1018, 1021 (1997) (any error in admitting non-testifying co-defendant's confession was harmless where it was merely cumulative of eyewitness testimony, defendant's admission and corroborating physical evidence).[7]

Although we find that Appellant's sole issue raised on appeal fails to provide him with a basis for relief, our review of Appellant's verdict and death sentence does not end with the disposition of his claim. While Appellant does not challenge the sufficiency of the evidence, this Court is required in all cases in which a death sentence has been imposed to independently review the record to determine whether the Commonwealth has established the elements necessary to sustain a conviction for first-degree murder. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n.

**6.** We also note that physical evidence introduced at trial corroborated the statements made by Daniel Lopez and Moreno. For example, Mr. Bolasky's body was found hog-tied, with a twisted towel around his neck, and wrapped in bed sheets as both Moreno and Daniel Lopez's testimony indicated. Further, the medical examiner confirmed that Mr. Bolasky sustained a blow to the head and that his cause of death had been strangulation by ligature.

**7.** In support of his contention that Barbosa's statement was not cumulative of the testimony given by Moreno and Daniel Lopez, Appellant cites *Commonwealth v. Bujanowski,* 418 Pa.Super. 163, 613 A.2d 1227 (1992). In *Bujanowski,* the Superior Court held that prior statements made by a non-testifying co-conspirator, implicating the defendant, were not admissible as substantive evidence. The Superior Court further found that the error in admitting the statements was not harmless since the statements were the only evidence linking the defendant to the crimes he had been charged with. Appellant argues that his case is similar to *Bujanowski* in that the inadmissible statement in his case, as in *Bujanowski,* was the only evidence directly implicating him in the murder of Mr. Bolasky. We disagree. Here, both Moreno's and Daniel Lopez's testimony provided evidence that Appellant actively participated in the murder of Mr. Bolasky. *See Commonwealth v. Carter,* 443 Pa.Super. 231, 240–41, 661 A.2d 390, 394–95 (1995) (improper admission of witness's statement was harmless error where another witness's properly admitted testimony provided a similar version of the crime and Commonwealth could prove case without erroneously admitted statements).

3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In conducting such a review, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner and determine whether the jury could find every element of the crime beyond a reasonable doubt. *Commonwealth v. Michael,* 544 Pa. 105, 110–12, 674 A.2d 1044, 1047 (1996). To obtain a conviction for first-degree murder, the Commonwealth must prove that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the defendant did the killing and that the killing was done with deliberation. *See* 18 Pa.C.S. § 2502(a), (d); *Commonwealth v. Rios,* 546 Pa. 271, 281, 684 A.2d 1025, 1030 (1996). The specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another. *Commonwealth v. Mitchell,* 528 Pa. 546, 550, 599 A.2d 624, 626 (1991).

After reviewing the record, we find that there was sufficient evidence from which the jury could have found each element of an intentional killing beyond a reasonable doubt. *See* 18 Pa.C.S. § 2502(a),(d). The testimony of Moreno and Daniel Lopez regarding Appellant's involvement in the planning, execution and covering up of the murder of Mr. Bolasky, coupled with the physical evidence corroborating their statements, documented above, provides ample evidence to support this finding. Even though, as Appellant argues, Daniel Lopez's and Moreno's statements, unlike Barbosa's, did not explicitly state that Appellant had been the one to actually strangle Mr. Bolasky, the evidence was clearly sufficient to support a conviction for first degree murder as an accomplice. *See Commonwealth v. Cox,* 546 Pa. 515, 529, 686 A.2d 1279, 1286 (1996) (accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids or attempts to aid such other person in either planning or committing that offense); *Commonwealth v. Daniels,* 537 Pa. 464, 470, 644 A.2d 1175, 1178 (1994) (evidence sufficiently supported conviction for first degree murder where defendant and co-conspira-

tor kidnapped child, locked him in trunk and co-conspirator then shot victim).

Having concluded that Appellant's conviction for first degree murder was proper, we are statutorily required to perform an automatic review of his sentence of death. Pursuant to this review, we must affirm the sentence of death unless we determine that:

(i)   the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii)  the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3).

Upon careful review of the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary factor, but rather was based upon the evidence that Appellant participated in the planning and execution of the premeditated killing of Mr. Bolasky during the robbery. We also conclude that the evidence was sufficient to support the finding of at least one aggravating factor, that Appellant has a significant history of felony convictions involving the use or threat of violence against the person pursuant to 42 Pa.C.S. § 9711(d)(9). During the penalty phase, the Commonwealth offered the testimony of police officers from Puerto Rico who presented evidence of Appellant's prior convictions for, among other offenses, burglary, robbery, attempted homicide and car-jacking. Thus, the jury's finding of this aggravating factor was amply supported by the evidence.[8]

8. The jury also found three other aggravating circumstances, which we find were also supported by the evidence: that the victim was killed to prevent his testimony against the defendant, 42 Pa.C.S. § 9711(d)(5); that the defendant had been convicted of voluntary manslaughter committed prior to this offense, 42 Pa.C.S. § 9711(d)(12); and that the

In terms of our duty to determine whether Appellant's sentence is excessive or disproportionate, we have independently reviewed Appellant's sentence in light of the sentencing data compiled and monitored by the Administrative Office of the Pennsylvania Courts. We conclude that the sentence of death imposed upon Appellant is not excessive or disproportionate to the penalty imposed in similar cases.[9]

Accordingly, we affirm the verdict and sentence of death.[10]

Justice SAYLOR files a Concurring Opinion in which Chief Justice FLAHERTY joins.

SAYLOR, Justice, concurring.

I respectfully disagree with the majority's conclusion that prosecution witness George Barbosa was not available for cross-examination by Romero's counsel. In this regard, I note that Barbosa's refusals to answer questions occurred during his direct examination by the Commonwealth. On cross-examination, however, Barbosa provided answers which, although punctuated by equivocations and memory lapses, were generally responsive to the questions posed by defense counsel. Indeed, Romero's counsel was able to elicit helpful testimony from Barbosa that suggested a motive for fabricating his prior inculpatory statement (Barbosa testified that police had told him that Romero had implicated him in the murder). Accordingly, I would hold that Romero's rights under the confrontation clause were not violated, and that the admission

killing was committed during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6).

9. We note that on June 25, 1997, the Governor signed legislation that removes a proportionality review requirement from the death penalty statute. Act of June 25, 1997, No. 28 § 1 (Act 28). However, Act 28 is not applicable to the instant case as Appellant's death sentence was imposed prior to June 25, 1997. *See Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426, 439–40 (Pa.1998) (provisions of Act 28 removing proportionality review requirement from death penalty statute do not apply retroactively to death sentences imposed before June 25, 1997).

10. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i) (Supp.1997).

of Barbosa's prior extrajudicial statement did not violate the evidentiary rule of *Commonwealth v. Brady*. *See generally United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988)(stating that the confrontation clause "guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish'" (citations omitted)).

Thus, I would not reach the difficult question of whether, for purposes of a harmless error analysis, evidence of an inculpatory eyewitness statement is merely cumulative of the testimony of others, none of whom was an eyewitness to the crime, particularly where such testimony is that of a co-conspirator and a jailhouse informant.

Chief Justice FLAHERTY joins this Concurring Opinion.