J-S45028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYRON SOMBERGER | |
| Appellant | No. 1895 EDA 2013 |

Appeal from the PCRA Order of June 21, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0902281-2005

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:  **FILED SEPTEMBER 30, 2014**

Tyron Somberger appeals the June 21, 2013 order denying his first counseled petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, without a hearing.  We affirm.

On December 10, 2007, following a jury trial, Somberger was convicted of two counts of attempted murder, four counts of aggravated assault, one count of carrying a concealed firearm without a license, and one count of possession of an instrument of crime.[1]  The PCRA court summarized the facts underlying Somberger's convictions as follows:

> On April 9, 2005, [Somberger] and others fought with another group of boys inside the Wow skating rink.  As a result, all [of]

---

[*]  Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S. §§ 901 (2501), 2702, 6106, and 907, respectively.

the individuals suspected of participating in the fight were ejected from the premises. The two groups continued their argument outside[,] at which time the boy with whom [Somberger] was arguing called out for someone to get his gun. At that point, [Somberger] left Wow in a dark-colored car threatening to return to the scene. [Somberger] returned approximately an hour later and opened fire on the group of teenagers waiting for a bus outside the Wow skating rink. [Somberger] wounded thirteen-year-old [T.G.] and fifteen-year-old [R.H.].[3]

[3] Neither one of the boys who were shot ([R.H.] and [T.G.]) were part of the fight in the Wow skating rink.

When police arrived after the shooting, they took [T.G.] to the hospital. A Septa transit police officer took [R.H.] to the hospital. Detective Thomas Lauf testified that he found shell casings outside the K&G clothing store near the bus stop.

[R.H.] told police that he saw two cars parked in the K&G lot just before the shooting. [R.H.] identified [Somberger] as the person who shot him. [R.H.] also saw [Somberger] and others get into those vehicles and drive away after the shooting. One vehicle was a dark-colored Chevrolet Caprice. The other vehicle was a white Pontiac Bonneville.

Officers subsequently arrested Stephen Baxley for his involvement in the crime. Upon his arrest, Baxley gave a statement to Detective [Vincent] Guarna. Baxley told Guarna that [Somberger] directed Baxley to drive him back to the Wow rink after the fight. Baxley did so. According to Baxley, when they arrived at the K&G parking lot, [Somberger] interacted with boys in a white Bonneville. Shortly thereafter, Baxley watched [Somberger] approach a group of kids (who were walking from the Wow toward a bus stop) and open fire on them. After the shooting, Baxley, [Somberger], and others in the Caprice and Bonneville entered their vehicles and fled the scene.

Shortly thereafter, Officer [Joseph Hansbury and his partner] found the Chevrolet Caprice and Pontiac Bonneville in a parking lot near the Lindenfield Projects. When police investigated, they discovered [that] the Caprice was vacant with its engine still running. The police learned that the Caprice belonged to Stephen Baxley. Police recovered a shotgun from the trunk of the Caprice. Baxley said in his statement that [Somberger] put

the gun in his car, but at trial Baxley said he did not know how the shotgun got into his car.

While [T.G.] and [R.H.] were recovering from their gunshot wounds in the hospital, Detective Guarna interviewed them. Detective Guarna also showed them a photo array that included [Somberger's] photo. Both identified [Somberger] as being part of the dispute at Wow skating rink. Moreover, [R.H.] identified [Somberger] as the shooter. As a result, the police subsequently arrested [Somberger].

PCRA Court Opinion ("P.C.O."), 12/17/2013, at 2-4 (citations to the notes of testimony and some footnotes omitted).

On February 7, 2008, the trial court sentenced Somberger to two consecutive terms of five to ten years' imprisonment for the attempted murder convictions,[2] and a consecutive term of two to four years' imprisonment for the firearm conviction. The trial court also imposed a consecutive three-year term of probation for the firearm conviction. No further penalty was imposed for the possession of an instrument of crime conviction.

On October 1, 2009, a panel of this Court affirmed Somberger's judgment of sentence. *Commonwealth v. Somberger*, No. 720 EDA 2008, slip op. at 1, 18 (Pa. Super. Oct. 1, 2009). On March 23, 2010, the Pennsylvania Supreme Court denied Somberger's petition for allowance of appeal. *Commonwealth v. Somberger*, 991 A.2d 312 (Pa. 2010) (*per curiam*).

---

[2] The trial court determined that the aggravated assault conviction merged with the attempted murder conviction.

- 3 -

On June 14, 2010, Somberger timely filed a first *pro se* PCRA petition. After numerous appointments (and withdrawals) of counsel, Somberger filed a counseled amended PCRA petition on June 29, 2012, in which Somberger raised numerous allegations of ineffective assistance of counsel ("IAC"). On May 10, 2013, the PCRA court issued notice to Somberger indicating the court's intent to dismiss the petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907. On June 21, 2013, the PCRA court formally dismissed Somberger's petition.

On June 27, 2013, Somberger filed a notice of appeal. On November 18, 2013, Somberger filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3] On December 17, 2013, the PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Somberger presents the following three issues for our consideration:

I.    Was the PCRA court's dismissal of [Somberger's] petition a legal error because the admission of Mr. Baxley's prior statement through the officer violated the Confrontation Clause?

II.   Was the PCRA court's dismissal of [Somberger's] petition a legal error because prior counsel was ineffective when counsel failed to demonstrate at trial or argue on appeal that admitting Mr. Baxley's prior statement through the officer was a violation of the rules of evidence and the Confrontation Clause?

III.  Was the PCRA court's dismissal of [Somberger's] petition inconsistent with the record because Mr. Stewart never

---

[3]   The PCRA court did not direct Somberger to file a concise statement. Nonetheless, Somberger elected to file a statement on his own volition.

- 4 -

> identified [Somberger] "as the person who committed the crimes" and only identified him as being present earlier in the night?

Brief for Somberger at 5.

Our review of a PCRA court order dismissing a petition under the PCRA is subject to the following standard:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012) (quoting *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012); internal citations omitted).

Additionally, the standard for a PCRA court's dismissal of a petition without a hearing is as follows:

> If the judge is satisfied from this review [of the petition] that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal.

Pa.R.Crim.P. Rule 907(1). "There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008).

Somberger's first two issues pertain to the admission at trial of Commonwealth witness Stephen Baxley's prior written statement to police as substantive evidence. Hence, we commence with a brief discussion of Baxley's involvement in this case, including his participation in Somberger's trial.

As noted earlier, after the shooting at the roller skating rink, the police located two vehicles that they believed were involved in the shooting. Baxley was observed by a police officer running away from one of the vehicles, the Chevrolet Caprice. Baxley later admitted that the Caprice belonged to him. Regardless, Baxley was apprehended while fleeing the vehicle. Detective Vincent Guarna interviewed Baxley about his involvement in the crime. Detective Guarna transcribed the details provided by Baxley during the interview, which Baxley then reviewed and signed.

In the interview, Baxley told Detective Guarna that Somberger instructed Baxley to drive back to the skating rink after the initial dispute that got them ejected from the premises. When they got to the vicinity of the rink, Somberger got out of Baxley's car and talked to other individuals that were waiting in the awaiting Bonneville. Shortly thereafter, Baxley

explained, Somberger approached a group of kids who were walking away from the rink (including R.H. and T.G.) and opened fire on them. Baxley told Detective Guarna that Somberger returned to the area where the two vehicles were parked, deposited a shotgun in the trunk of the Caprice, and that they all fled the scene in the two vehicles.

At trial, Baxley testified that he did not remember giving the statement to the police. Baxley alleged that, at the time, he had been drinking alcohol and ingesting narcotics on a daily basis. He also asserted that he did not remember signing the statement after being interviewed by Detective Guarna. Baxley testified that, although he knew Somberger, he was not with him at the skating rink on the night in question. Baxley also did not remember how the shotgun got into the trunk of his car. Baxley testified again on cross-examination that he did not remember making the statement, being arrested, or being interviewed by Detective Guarna.

After brief argument at sidebar, the Commonwealth introduced Baxley's statement as substantive evidence during its direct examination of Detective Guarna. The Commonwealth's attorney went through the written statement question-by-question with the detective, introducing to the jury the details of Baxley's statement as described above.

After Detective Guarna's testimony, the trial court noted outside the presence of the jury that Somberger's counsel had objected to the introduction of the prior inconsistent statement based on "Rule 803." Notes of Testimony ("N.T."), 12/7/2007, at 74. The prosecutor responded that the

basis upon which the Commonwealth moved for admission of the statement was **Commonwealth v. Lively**, 610 A.2d 7 (Pa. 1992) (discussed *infra*). The trial court admitted the statement in its entirety as substantive evidence pursuant to **Lively**.

With that background in place, we now turn to Somberger's specific claims. In his first issue, Somberger presents a direct challenge to the admission of Baxley's statement as a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution. **See** Brief for Somberger at 16. We first must consider whether this claim is cognizable, or whether it is waived for PCRA purposes.

Somberger maintains that the claim falls within the PCRA's purview based upon subsection § 9543(a)(2)(i) of the PCRA, which provides as follows:

> To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence . . . [a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

42 Pa.C.S. § 9543(a)(2)(i). Although Somberger raises a violation of both the United States and Pennsylvania Constitutions, which are facially cognizable claims, such claims still are subject to the PCRA's waiver provision. Subsection 9544(b) of the PCRA mandates that "an issue is

waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Somberger's direct constitutional challenge undoubtedly is a claim that **could** have been raised at trial. It was not. As noted earlier, the only challenge that counsel raised to Baxley's statement was based upon the rules of evidence, not upon our constitutions. Because Somberger's present claim could have been raised at trial, but was not, it is waived for PCRA purposes pursuant to the clear terms of subsection 9544(b).

Regardless of whether his direct challenge is waived, Somberger raises a similar challenge in the context of ineffective assistance of counsel in his second claim. *See Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2005). Indeed, Somberger contends (1) that trial counsel was ineffective for failing to argue that the introduction of Baxley's statement at trial was a violation of his Confrontation Clause rights, and (2) that counsel was ineffective for failing to pursue the issue of whether the statement was admissible under our rules of evidence or our constitutions on direct appeal. *See* Brief for Somberger at 20-23.

Somberger's IAC arguments are governed by the following standard:

In Pennsylvania, counsel is presumed effective, and a defendant bears the burden of proving otherwise. In order to be entitled to relief on a claim of ineffective assistance of counsel, the PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying claim has arguable merit; (2) counsel whose effectiveness is at issue did not have a reasonable basis for his action or inaction; and (3) the PCRA

- 9 -

petitioner suffered prejudice as a result of counsel's action or inaction. When determining whether counsel's actions or omissions were reasonable, we do not question whether there were other more logical course of actions which counsel could have pursued: rather, we must examine whether counsel's decisions had *any* reasonable basis. Further, to establish prejudice, a petitioner must demonstrate that but for the act or omission in question, the outcome of the proceedings would have been different. Where it is clear that a petitioner has failed to meet any of the three, distinct prongs . . . , the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met.

***Commonwealth v. Steele***, 961 A.2d 786, 796-97 (Pa. 2008) (citations and internal quotation marks omitted; emphasis in original).

We begin with the arguable merit prong of the IAC test. Although Somberger presents distinct claims under our constitutions and our rules of evidence, resolution of this prong of the IAC test in this case boils down to a single inquiry: whether Baxley was subject to cross-examination at trial about his prior out-of-court statement. Accordingly, we consider Somberger's two arguments and the respective applicable law together, beginning with Somberger's Confrontation Clause argument.

The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witness against him." U.S. Const. Amend. VI. Similarly, Article 1, Section 9 of the Pennsylvania Constitution provides: "In all criminal prosecutions the accused hath a right . . . to be confronted with the witnesses against him. . . ." Pa. Const., Art. 1, § 9.

- 10 -

In **Crawford v. Washington**, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause prohibits the government from introducing "testimonial" statements of a witness who does not testify at trial, unless the Commonwealth can demonstrate that the witness is unavailable to testify and that the defendant had an opportunity to cross-examine the witness about the hearsay statements. However, the Commonwealth may introduce prior "testimonial" statements of a witness so long as the declarant testifies at trial and is subject to cross-examination, without running afoul of the Confrontation Clauses. **Id.** at 60 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of his prior **testimonial** statements.") (emphasis added) (citing **California v. Green**, 399 U.S. 149, 162, (1970)); **see also Commonwealth v. Barnett**, 50 A.3d 176, 189 n.6 (Pa. Super. 2012) ("It is axiomatic that the Confrontation Clause does not apply where the out-of-court speaker is available for cross-examination in court.") Somberger concedes that Baxley's statement to Detective Guarna was testimonial. **See** Brief for Somberger at 17. Thus, our sole inquiry is whether Baxley was subjected to cross-examination sufficient to satisfy the Confrontation Clauses in our constitutions.

The United States Supreme Court has explained that the Confrontation Clause does not vest in a criminal defendant the right "to cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." **United States v. Owens**, 484 U.S. 554, 559 (1988). Rather, "the

- 11 -

Confrontation Clause guarantees only 'an opportunity for effective cross-examination.'" *Id.* (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)).

We now turn our attention to Somberger's argument that Baxley's prior inconsistent statement did not meet the requirements set forth in the Pennsylvania Rules of Evidence to be admissible as substantive evidence. In *Commonwealth v. Lively*, 610 A.2d 7 (Pa. 1992), our Supreme Court held that, in order for a witness's prior inconsistent statement to be admitted as substantive evidence at trial, the statement must be "given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements." *Id.* at 10. The rule from *Lively* was codified in our rules as Pennsylvania Rule of Evidence 803.1(1). Rule 803.1 provides that prior inconsistent statements are admissible as substantive evidence if the declarant is subject to cross-examination and the statement: "(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition; (B) is a writing signed and adopted by the declarant; or (C) is a verbatim contemporaneous electronic, audiotaped, or videotaped recording of an oral statement." Pa.R.E. 803.1(1).

Instantly, Somberger admits that the contested statement was written and that it was signed by Baxley, satisfying subsection (B) of Rule 803.1(1). *See* Brief for Somberger at 22. Accordingly, we turn our attention to the

lone question that we must resolve:  whether Baxley was subject to cross-examination sufficient to satisfy Pa.R.E. 803.1 and the Confrontation Clauses enshrined in our constitutions.  For the reasons that follow, we hold that the cross-examination of Baxley was sufficient.

To this point, Somberger relies almost exclusively upon the Pennsylvania Supreme Court's decision in ***Commonwealth v. Romero***, 722 A.2d 1014 (Pa. 1999).  In ***Romero***, a landlord, who went to collect rent from tenants at an apartment building that he owned, was robbed and killed inside of the building.  ***Id.*** at 1015.  His body was later found hog-tied, wrapped in sheets, and discarded on the side of a secluded road.  A few weeks after the robbery and murder, Romero and three other individuals were arrested.

One of the individuals arrested was a man named George Barbosa. Prior to trial, Barbosa confessed to his role in the crimes.  ***Id.*** at 1016. Barbosa explained to police that he, Romero, and two others all were involved in the planning and execution of the crimes.  Barbosa told police that he and Romero hid in a third-floor bathroom while another individual brought the landlord up to the third floor, where Romero attempted to kill the landlord by hitting him on the head with a pistol.  When that technique proved unsuccessful, Barbosa wrapped a towel around the landlord's neck, and then he, Romero, and another individual took turns tightening the towel until the landlord was dead.  Barbosa explained to the police that they then wrapped the body in bed sheets, and dumped it in a desolate area.  ***Id.***

- 13 -

In exchange for a guilty plea for a life sentence (instead of the death penalty), Barbosa agreed to testify for the Commonwealth at Romero's trial. Barbosa acknowledged during his testimony that he had provided a statement to the police that implicated other men in the robbery and murder. However, he did not name Romero as one of those men. Moreover, Barbosa refused to answer any questions regarding Romero's involvement in the murder. Because of Barbosa's refusal, the trial court permitted the Commonwealth to introduce through a police officer's direct testimony a transcription of the tape-recorded statement that Barbosa had provided to the police that implicated Romero. *Id.*

Romero was convicted of first-degree murder and related charges, and was sentenced to death. On direct appeal to the Pennsylvania Supreme Court, Romero argued that the trial court erred in permitting the Commonwealth to introduce the transcription of Barbosa's statement, because Romero was not able to cross-examine Barbosa due to his outright refusal to answer questions relevant to Romero's involvement in the crimes. The Court agreed with Romero that admission of the statement was error. *Id.* at 1016-17. The Court noted that, for a prior inconsistent statement to be admissible as substantive evidence, the declarant does not only have to be available for cross-examination generally, but the declarant specifically must be available for cross-examination concerning the prior statement at issue. *Id.* at 1017. Quoting **Commonwealth v. Brady**, 507 A.2d 66 (Pa. 1986), the Court explained that such examination provides the trier of fact

- 14 -

with a meaningful opportunity to observe the sworn witness while being questioned about the discrepancy between the prior statement and the testimony that he was providing in open court. **Romero**, 722 A.2d at 1017 (quoting **Brady**, 507 A.2d at 69).

The Court held that, because Barbosa "explicitly and repetitively refused to answer questions about the prior statement as it related to [Romero]," Romero effectively was never given a meaningful opportunity to cross-examine Barbosa on the veracity of his prior statement implicating Romero. **Id.** at 1017-18. Nonetheless, the Court ultimately held that the error was harmless, and affirmed Romero's judgment of sentence.

Somberger steadfastly maintains that the circumstances of this case mirror those in **Romero**, and compel a conclusion that Baxley's statement was inadmissible. We disagree. In **Romero**, the testifying witness intentionally refused to answer questions, effectively preventing meaningful cross-examination. Instantly, Baxley did not refuse to answer questions, but rather testified under oath that he did not remember being at the skating rink, being arrested, providing a statement to the police, or identifying Somberger as being the shooter. Refusing to answer questions and not being able to remember certain facts differ qualitatively, a distinction that was illustrated in **Commonwealth v. Carmody**, 799 A.2d 143 (Pa. Super. 2002).

In that case, Carmody was arrested after his girlfriend went to a local police station and reported that Carmody had assaulted her earlier that

evening. *Id.* at 145. The girlfriend showed physical signs that corroborated her allegation, including swollen eyes and scratch marks. Carmody's girlfriend then provided the police with a written statement describing the assault in detail. Specifically, she explained that Carmody hit her repeatedly, and threatened to kill her while holding a knife to her throat. Carmody was arrested shortly thereafter. *Id.*

Carmody's girlfriend was called to testify at Carmody's preliminary hearing. She denied that Carmody hit her, and informed the court that she had sent a letter to the court asking that the charges against Carmody be dropped. She further explained that she had been drinking heavily on the night in question, and could not remember anything that happened on that night. She maintained that nothing that she wrote for the police was reliable due to her intoxication. *Id.*

The Commonwealth sought, and was permitted, to introduce the girlfriend's written statement as substantive evidence at the preliminary hearing. The police officer who took the statement testified as to the contents of the statement, and to his opinion that the girlfriend was not intoxicated when she provided the statement. *Id.* at 145-46.

After Carmody was held over for trial, he filed a pre-trial *habeas corpus* motion seeking to dismiss the charges against him. The *habeas* court concluded that the prior written statement was inadmissible, and dismissed one of the charges against Carmody. The Commonwealth appealed. *Id.* at 146.

On appeal, this Court rejected the *habeas* court's conclusion that, because of the purported lack of memory by Carmody's girlfriend, she was unavailable for cross-examination. To the contrary, this Court noted the following:

> We cannot agree that there was no opportunity to cross-examine [the girlfriend] on her prior statement. Both Carmody and the Commonwealth were permitted to question [her] as to why she said one thing on the night she fled from Carmody and something entirely different at the preliminary hearing. Those inquiries constituted classic cross-examination regarding prior statements. The **substance** of [her] answers does not dictate **whether she was subject** to cross-examination. The question is whether she testified about the prior statement, not what she responded when she testified.

*Id.* at 149 (emphasis in original). Additionally, we noted that, by accepting and ruling upon the girlfriend's explanation that she was too intoxicated to remember anything from that night, the *habeas* court functionally assessed her credibility, which is an exercise that is reserved solely for a fact finder. *Id.* For these reasons, we reversed the *habeas* court, and remanded the matter for trial on all charges.

Returning to the present case, we must conclude that Baxley was subject to cross-examination sufficient to satisfy our constitutions, Pa.R.E. 803.1(1), and *Lively*. This case is more akin to *Carmody* than it is to *Romero*. The most obvious distinction is that Baxley did not outright refuse to answer questions regarding Somberger like Barbosa did in *Romero*. Rather, Baxley alleged that he was using drugs and alcohol on a daily basis,

and that the use of those substances totally impaired his ability to recall the events in question, much like the girlfriend in *Carmody*.

More importantly, as in *Carmody*, Baxley was cross-examined about the statement. On direct examination, Baxley claimed not to remember any of the details of the night in question. N.T., 12/6/2007, at 88-91. The prosecutor confronted Baxley with the statement, and went through the statement in detail. Baxley continued to assert that he did not remember the details of the night in question due to his intoxication. *Id.* at 92-111. On cross-examination, defense counsel questioned Baxley about his use of drugs, his inability to remember the details of the night in question, the fact that his initials and signature appear on the written statement, and the shotgun that was found in his car. *Id.* at 112-118.

Thus, Somberger was able to cross-examine Baxley about the prior statement. He may not be content with the answers that he received, but, as we stated in *Carmody*: "[t]he **substance** of [a witness'] answers does not dictate **whether [the witness] was subject** to cross-examination. The question is whether [the witness] testified about the prior statement, not what [the witness] responded when [the witness] testified." *Carmody*, 799 A.2d at 149 (emphasis in original). Upon the weight of this precedent, Baxley clearly was subject to cross-examination. Consequently, Somberger's claim that trial counsel was ineffective for failing to raise a constitutional challenge to Baxley's testimony, as well as his claim that counsel was ineffective for failing to pursue a challenge to Baxley's

- 18 -

testimony on direct appeal based upon Pa.R.E. 803.1(1) and *Lively*, lack arguable merit. As such, his entire IAC claim necessarily fails. *See Steele*, *supra*.

In his last issue, Somberger contends that trial counsel was ineffective for failing to object to a factually erroneous jury instruction given by the trial court. H.S. was inside of the skating rink during the initial melee that resulted in numerous individuals being ejected from the rink. In fact, H.S. mistakenly was included in the group of people that were ejected. H.S. was able to identify Somberger as one of the individuals who was involved in the fight inside of the skating rink. However, H.S. was **not** able to identify Somberger as one of the shooters outside of the rink later that evening. Nonetheless, in its instructions to the jury, the trial court stated the following: "In their testimony, [R.H.] and [H.S.] identified the defendant as the person who committed the crimes." N.T., 12/7/2007, at 83. Trial counsel did not object to the trial court's clear factual error.

As noted earlier, "[w]here it is clear that a petitioner has failed to meet any of the three, distinct prongs . . . , the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." *Steele*, 961 A.2d at 797. Hence, we proceed directly to the prejudice prong of the IAC test. To satisfy the prejudice prong, Somberger must demonstrate that, but for counsel's failure to object, the outcome of his trial would have been different. *Id.* Somberger cannot make such a demonstration.

First, the trial court's erroneous statement was a solitary incident. It was not repeated, nor did it pervade the judge's instructions. Second, and more importantly, the isolated misstatement was overwhelmingly outweighed by the evidence against Somberger at trial. H.S. identified Somberger as being inside of the skating rink during the initial fight. H.S. also observed as the fight continued briefly outside of the rink, as well as Somberger's continued involvement. H.S. heard Somberger join in threats to return to the rink for additional violence. In his statement to the police, Baxley identified Somberger as the shooter. Based upon Baxley's identification, the police constructed a photo array. R.H. identified Somberger as the shooter from the array.

The evidence at trial identifying Somberger as the shooter of R.H. and T.G. was substantial. Accordingly, we cannot conclude that the trial court's isolated, but mistaken, statement that R.S. also identified Somberger carried such influence that, had counsel objected, the result of the trial would have been different. Somberger has not satisfied the prejudice prong of the IAC test, and his claim must fail in its entirety.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/30/2014