**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MASAI GREEN | : | |
| | : | |
| Appellant | : | No. 517 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 2, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010315-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MASAI HODARI GREEN | : | |
| | : | |
| Appellant | : | No. 518 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 2, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005408-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MASAI GREEN | : | |
| | : | |
| Appellant | : | No. 519 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 2, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005095-2023

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MASAI GREEN :
:
Appellant : No. 520 WDA 2024

Appeal from the Judgment of Sentence Entered November 2, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005096-2023

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.: **FILED: June 23, 2026**

Masai Green ("Green") appeals from the judgment of sentence following his convictions of, *inter alia*, attempted homicide, two counts of aggravated assault, multiple violations of the Uniform Firearms Act ("VUFA"), recklessly endangering another person ("REAP"), flight to avoid apprehension, two counts of possession with intent to deliver, tampering with evidence, and persons not to possess firearms.[1]  Green asserts the trial court improperly admitted hearsay evidence, and erred by denying his double jeopardy motion; he also asserts the evidence was insufficient to sustain his conviction of possession of firearms prohibited, and the trial court imposed an illegal sentence.  We affirm all of Green's convictions except his second conviction for possession of firearm which we vacate.  Because our disposition may affect

---

[1] **See** 18 Pa.C.S.A. §§ 901(a), 2701(a)(1), (4), 2705, 5126(a), 6106(a)(1), 4910(1), 6105(a)(1), 35 P.S. § 780-113(a)(30).

the trial court's overall sentencing scheme, we vacate all of Green's sentences and remand for resentencing in accordance with this decision.

Green's first joint trial with co-defendant, Aaron Tipton ("Tipton"), ended in a mistrial when it was discovered during cross-examination that Sergeant Christoper Duncan ("Sergeant Duncan") of the Wilkinsburg Police Department wrote a police report the Commonwealth did not produce in discovery.

Prior to his second trial, Green moved for a discharge from prosecution on double jeopardy grounds because the Commonwealth did not produce Sergeant Duncan's report.[2]  In January 2023, the court held a hearing on Green's motion.  Assistant District Attorney Kate Kelly Robb ("ADA Robb") testified she was assigned to Green's case at the pretrial conference stage in 2019, and Tipton's upon his arrest in 2020, and was the sole ADA assigned to those cases.  *See* N.T., 1/25/23, at 9-11.  ADA Robb discussed her trial preparation, including her contact with the police department and the affiant in the case to ensure she had obtained all discoverable information.  ADA Robb also testified she compared Allegheny County's police file to the District Attorney's office file for any discrepancies, and the files included reports by multiple county detectives.  *See id*. at 11-16.  ADA Robb testified she never saw or heard about Sergeant Duncan's report until he mentioned it on cross-

_____

[2] Sergeant Duncan's report stated the shooting victim referred to Green as "SB Higler" (whereas another report identified him as "Higler") and co-defendant Tipton as "Tip," or "TIP" (whereas another report identified him as "Tips").  *See* N.T., 10/25/22-10/26/22, at 90-103, 107-09.

examination at trial. ***See id***. at 19-24. ADA Robb testified she reviewed and produced Detective Kevin L. McCue's ("Detective McCue") report which detailed Sergeant Duncan's participation in the case and had no reason to believe Sergeant Duncan created a separate report after speaking to Detective McCue. ***See id***. at 24-34. Sergeant Duncan did not return ADA Robb's phone call prior to trial to discuss the case and when ADA Robb spoke to him on the day of trial, he did not mention he prepared a report. ***See id***. at 34. Finally, ADA Robb testified Sergeant Duncan's report contained less specificity than Detective McCue's report, which she had received and produced in discovery. ***See id***. at 35-38.

Allegheny County Detective Darren Gerlach, the lead detective on the case, testified he first learned of Sergeant Duncan's report during that officer's testimony at the first trial; until that moment, he believed Sergeant Duncan had conveyed all the information he had to Detective McCue, who prepared a report summarizing Sergeant Duncan's observations. ***See id***. at 60-67.

At the conclusion of the hearing, the court held the issue under advisement. In late May 2023, the trial court denied Green's double jeopardy motion. It found ADA Robb believed she had possessed all the reports in this case, reasonably concluded no other report existed given the thoroughness of Detective McCue's report, and only learned of Sergeant Duncan's report during his cross-examination at trial. ***See*** Trial Court's 1925(b) Opinion, 5/31/23, at

4. Accordingly, the failure to produce the report was a **_Brady_**[3] violation but the prosecutor did not commit reckless conduct precluding retrial. **_See id_**. at 6.

The record discloses the following facts adduced at Green's second trial.[4] On March 9, 2019, Martin Page ("Page") was driving in Wilkinsburg when he saw a person later identified as fifteen-year-old A.B., fall to his knees. When Page stopped his car and approached, A.B. said he had been shot. A.B. pointed to the wound in his left chest and asked Page to call his mother. **_See_** N.T., 7/14/23, at 38-44.

Sergeant Duncan responded within two minutes to a report of a man shot on Montier Street and found A.B. passing in and out of consciousness. A.B. told Sgt. Duncan "SB Higler" and "Tip" or "Tips" shot him. **_See id_**. at 46-52. Police found fourteen .45 fired cartridge cases ("FCCs") one block away on Maple Street in two groupings of seven. **_See id_**. at 61-66, 70-76.

---

[3] **_See Brady v. Maryland_**, 373 U.S. 83 (1963).

[4] Appellant fails to include in his brief a concise statement of facts and a citation to the record to where they may be found, in violation of Pa.R.A.P. 2117(a)(4). We remind counsel that this Court will not act as a party's advocate, nor will scour the record on an appellant's behalf. **_See Commonwealth v. Beshore_**, 916 A.2d 1128, 1140 (Pa. Super. 2007). We also note with displeasure that neither the trial court nor the Commonwealth has provided a summary of the facts necessary to review the issues raised on appeal.

Detective McCue, part of the team assigned to investigate the shooting, contacted Wilkinsburg Police Detective Brandon Rourke ("Detective Rourke")[5] to see if he knew anyone who went by the street names "Tip" and "Higgler" or "S.B. Higgler." Detective Rourke knew Aaron Tipton and Green from previous encounters. He told Detective McCue those aliases belonged to Tipton and Green, who associated with each other. *See id*. at 92-98.[6]

Allegheny County Detective Greg Renko ("Detective Renko"), who did not know either defendant, created photo arrays for use in a possible identification. *See id*. at 101-108. Detective McCue conducted a recorded interview of A.B. at Children's Hospital the day after the shooting, which was admitted into evidence at trial, in which A.B. identified "Tip" and "Hig" as the men who shot him. When shown the arrays, A.B. identified Green and Tipton from the arrays as the men who shot him and initialed their photographs. *See id*. at 123-31, 134, 138-39, 143-44.

At trial, A.B. testified he remembered being shot eight times but stated he does not know either Green or Tipton, did not recall giving a statement to police, or identifying Green and Tipton from photo arrays. *See id*. at 112-22.

_____

[5] Detective Rourke received a subsequent promotion to the rank of Lieutenant. For ease of reference, we refer to him using his rank at the time of the events described.

[6] Tipton has "Tip" tattooed on his arm. *See* N.T., 7/14/23, at 132.

At trial, Detective Rourke testified that on March 13, 2019, approximately four days after the shooting, he was driving an unmarked car on the 1800 block of McNary Boulevard, around 11:00 a.m., when a vehicle drove directly at him at high speed. He stated he turned his car around and attempted to make a traffic stop of the vehicle. He testified the vehicle stopped, a man, later identified as Green, tripped getting out and dropped a silver semi-automatic weapon. Green got up, picked up his gun and fled on foot. After a car and foot pursuit, police detained him and recovered, *inter alia*, twenty-one packets of drugs from his person, which contained fentanyl and synthetic heroin in excess of ten grams.[7] After a K-9 search, police recovered a Taurus .45 semi-automatic weapon from the path of Green's flight. *See id*. at 145-55, 159, 170-77, 181. Detective Michael Slatcoff of the Pittsburgh Bureau of Police Narcotics testified as a narcotics expert that the drugs were possessed with the intent to deliver. *See id*. at 181-96.

Thomas Morgan, a forensic scientist at the Cuyahoga County, Ohio, Regional Forensic Science Laboratory and an expert in Firearm and Toolmark analysis, examined the FCCs recovered from the shooting scene and the Tarus .45 semi-automatic Green discarded, and determined the gun Green possessed fired seven of the recovered FCCs. *See id*. at 200-16.

---

[7] One bag also contained cocaine. *See* N.T., 7/14/23, at 195.

The parties stipulated to the admission of A.B.'s medical records and further stipulated that neither Green nor Tipton had a valid permit to carry a concealed weapon on the date of the shooting. *See id*. at 228-29.

The jury convicted Green of the above-described offenses. *See* N.T., 7/18/23, at 130-34.[8] It then separately convicted him of persons not to possess firearms. *See id*. at 153-54.[9] In November 2023, the trial court imposed a cumulative sentence of 410 to 840 months of imprisonment. Green filed a post-sentence motion. The trial court granted a motion for judgment of acquittal on the charges of flight to avoid apprehension and carrying a firearm without a license but denied the motion for a new sentencing hearing. Green timely appealed and he and the court complied with Pa.R.A.P. 1925.

On appeal, Green raises four issues for our review:

I. Did the trial court err in authorizing the admission, as substantive evidence under Pa.R.E. 803.1(4), of A.B.'s recorded out-of-court statement insofar as it did not meet the admissibility requirements of Pa.R.E. 803.1(4), and was not admissible under any other recognized exception to the rule against hearsay?

II. Did the trial court err in denying [] Green's Motion to Dismiss/Bar Prosecution under the Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Pennsylvania Constitution insofar as the Commonwealth's failure to disclose *Brady* evidence constituted at least a conscious disregard of a substantial risk that [] Green would be deprived of a fair trial as a result?

---

[8] The jury convicted Tipton of aggravated assault and recklessly endangering another person. *See* N.T., 7/18/23, at 134.

[9] This Court ordered Green's appeals to be consolidated. *See* Order 6/21/24.

III. Was the evidence insufficient as a matter of law to support two convictions for Possession of Firearm Prohibited[?] Additionally, or in the alternative, was [] Green unlawfully convicted and sentenced twice for the same offense of Possession of Firearm Prohibited in violation of the Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Pennsylvania Constitution?

IV. Did the trial court err in applying 18 Pa.C.S.[A.] §1102(c) when it imposed a sentence of 230 to 460 months' imprisonment for Criminal Attempt Homicide . . . in the absence of a jury finding of serious bodily injury arising from such offense, in violation of **Apprendi v. New Jersey**, 530 U.S. 466 (2000)?

Green's Brief at 3.

Green's first claim asserts the trial court admitted evidence in violation of Pa.R.E. 803.1(4).

Our standard of review requires us to review a trial court's admission of evidence for an abuse of discretion. An abuse of discretion is the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence of record." **Commonwealth v. Vance**, 316 A.3d 183, 189 (Pa. Super. 2024).

Hearsay is defined as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). **See also Commonwealth v. Manivannan**, 186 A.3d 472, 482 (Pa. Super. 2018) (defining hearsay).

Pennsylvania Rule of Evidence 803.1 Exceptions to the Rule Against Hearsay -- Testimony of Declarant

The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:

* * * * *

(1) **Prior Inconsistent Statement of Declarant-Witness.** A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:

* * * * *

(C) is a verbatim contemporaneous electronic recording of an oral statement.

* * * * *

(4) **Prior Statement by a Declarant -Witness Who Claims an Inability to Remember the Subject Matter of the Statement.** A prior statement by a declarant-witness who testifies to an inability to remember the subject matter of the statement, unless the court finds the claimed inability to remember to be credible, and the statement:

(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;

(B) is a writing signed or adopted by the declarant; or

(C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1. "The purpose of this hearsay exception is to provide against the 'turncoat witness' who once provided a statement, but now seeks to deprive the use of this evidence at trial." Comment Pa.R.E. 803.1.

Green asserts the trial court erroneously admitted A.B.'s out-of-court, tape-recorded statement identifying the shooters. Green asserts that because A.B. stated he recalled the subject matter of the statement, *i.e.*, being shot, but did not remember who shot him or remember giving a recorded

statement, *see* Green's Brief at 26-30, his identification of the shooters was inadmissible under Rule 803.1(4). Green asserts the trial court failed to make any factual findings to support the conclusion A.B. was faking memory loss, and A.B.'s receipt of anesthesia and recent surgery explained his memory loss. *See id*. at 31-33. Green further claims A.B.'s statement was not admissible under Pa.R.E. 803.1(1) because A.B. was not questioned on direct examination about the contents of his prior statement. *See id*. at 33-34, citing *Commonwealth v. Romero*, 722 A.2d 1014 (Pa. 1999).[10]

The trial court found A.B. was a "turncoat witness" who feigned memory loss, as demonstrated by the fact he recalled events immediately before, during and after the shooting including speaking to Page immediately after the shooting and being transported to the hospital, but did not recall his interview and could not identify his own voice on a recorded statement. *See* Trial Court Opinion, 10/9/24, at 5.

The trial court did not abuse its discretion by admitting evidence of A.B.'s out-of-court statement. As the Comment to Pa.R.E. 803.1(4) explicitly states, the exception was created to prevent a turncoat witness who gives a statement to prevent the use of that evidence at trial, as A.B. attempted to

---

[10] Green also argues the statement is inadmissible under Pa.R.E. 803.1(1), because the statement was not offered until after A.B. testified, 803.1(3), because A.B. not did vouch for the reliability of the record, and 803.12(2), because A.B. denied making a statement identifying the shooters. *See* Green's Brief at 34-35.

do here. Although he gave a tape-recorded statement in which he repeatedly identified Green and Tipton, by their nicknames, as the men who shot him, had previously identified them at the scene and later identified them from a photo array, A.B. attempted to deprive the Commonwealth of the use of his recorded statement by asserting he did not "really remember the whole conversation or anything" when he identified Green and his conspirator in his statement to police, **see** N.T. 7/14/23, at 116, does not know SB Higler or Tip, **see id**. at 114, and does not recall his identification of Green and his conspirator at the scene and later from a photo array, **see id**. at 117-18. Based on A.B.'s very selective memory – which permitted him to recall: what he was doing and where he was going when he was shot, speaking to Page immediately after being shot, and being taken to the hospital – but not any of his multiple identifications of the shooters by their nicknames and from their photographs – the trial court found A.B. was feigning memory loss. The statement was accordingly admissible under Pa.R.E. 803.1(4)(C).[11]

Further, even if the trial court had erred in admitting A.B.'s statement, that error would be harmless because A.B. identified Green and his conspirator at the scene as the shooters using their nicknames, demonstrating his familiarity with them, and Green was arrested four days later, moments after

_____

[11] Accordingly, we do not address Green's assertions that the evidence did not satisfy other hearsay exceptions, except to note that the Commonwealth's decision not to introduce A.B.'s statement until after his testimony restricted its ability to avail itself of some of those exceptions.

discarding the gun used to shoot A.B. *See Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014) (stating a defendant is entitled to a fair trial, not a perfect one, and holding that an error is harmless where, *inter alia*, it does not prejudice the defendant or the prejudice was *de minimis*).

Green next asserts the trial court erred by failing to preclude his retrial because the Commonwealth failed to disclose Sergeant Duncan's report.

Our standard and scope of review are well settled:

> An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*[.] To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.
>
> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) (internal citations and brackets omitted). While our review is not "blindly deferential" to the trial court's credibility determinations, we nevertheless recognize that "[a] fact-finder who hears witness testimony first-hand is able to take into account not only the words that are spoken and transcribed, but the witnesses' demeanor, tone of voice, mannerisms, and the like." *Commonwealth v. Johnson*, 231 A.3d 807, 818 (Pa. 2020) (internal citations omitted).

This Court has recently set forth the current state of the law on this issue as follows:

> The Double Jeopardy Clauses of the both the federal and Pennsylvania constitutions protect a defendant from repeated criminal prosecutions for the same offense. The purpose of this prohibition against double jeopardy is prevent the government from making repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continued state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty.

*Commonwealth v. Krista*, 271 A.3d 465, 469–70 (Pa. Super. 2022) (citations and emphasis omitted). We simultaneously recognized that a retrial following a mistrial does not ordinarily offend double jeopardy protections and that dismissal of charges on double jeopardy grounds not only punishes the prosecutor but the public at large, which has a reasonable expectation that people charged with crimes will be fairly prosecuted. Therefore, "dismissal of charges is an extreme sanction that should be imposed sparingly," where the most blatant and egregious circumstances exist. *See id.*, quoting *Commonwealth v. Burke*, 780 A.2d 1136, 1144 (Pa. 2001).

In *Johnson*, *supra*, the Supreme Court expanded the definition of prosecutorial overreaching that bars mistrial from instances of intentional misconduct designed to provoke a mistrial and those where the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial to instances in which prosecutorial misconduct "not only deprives the defendant of his right to a fair trial, but is undertaken

recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." *Id*. The Court made it clear that it is still true that not every instance of error by the Commonwealth requires a finding that retrial is barred:

> In reaching our present holding, we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter. To the contrary, we bear in mind the countervailing societal interests . . . regarding the need for effective law enforcement, and highlight again that, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial *overreaching* – which, in turn, implies some sort of conscious act or omission.

*Id*. at 826 (citation omitted, emphasis in original). Overeaching, the Court explained, "is conduct that reflects a fundamental breakdown in the judicial process where the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." *Id*. at 824. As this Court has further explained, even where a prosecutor engages in willful misconduct, double jeopardy protections do not deliberately bar retrial; such a bar exists where the prosecutor's misconduct is a deliberate act overreaching and not an isolated incident. *See Krista*, 271 A.3d at 474. Thus, prosecutorial misconduct barring retrial does not occur when a prosecutor states the appellant should take the stand if he wants to explain what happened, *see id*. at 475, or when a prosecutor fails to produce exculpatory material in the mistaken belief the undisclosed letter was a recent fabrication, *see Commonwealth v. King*, 271 A.3d 437, 450 (Pa. Super. 2021).

Green asserts Sergeant Duncan's report was "materially dissimilar" to Detective McHugh's report because it states A.B. identified the shooters by their nicknames, whereas Sergeant Duncan's report states A.B. provided slightly different nicknames. *See* Green's Brief at 38-39. He asserts the prosecutor testified she never asked Sergeant Duncan if he wrote a report and never met with him prior to trial. Green faults the lead detective on the case for failing to release the nature of Sergeant Duncan's testimony. Accordingly, he asserts he is entitled to a discharge of prosecution. *See id*. at 39-42.

The trial court, which conducted an evidentiary hearing on Green's claim, stated the *Brady* violation here did not rise to the level of reckless conduct. It noted the prosecutor received numerous reports from officers investigating the case, "and reasonably inferred that no reports were missing. Neither Sergeant Duncan nor anyone affiliated with the case provided the Duncan report to Robb or notified her of its existence." *See* Trial Court Opinion, 10/9/24, at 9. It noted Detective McCue's report covered the matters in Sergeant Duncan's report, which supported the prosecutor's belief Sergeant Duncan had not written a separate report. Accordingly, the trial court denied a motion to bar mistrial on double jeopardy grounds.

The record supports the trial court's determination. ADA Robb testified at the double jeopardy hearing she contacted the police department and the affiant in the case to ensure she had obtained all discoverable information and compared the Allegheny County police file to the District Attorney's office file

for any discrepancies. She testified she never saw or heard of Sergeant Duncan's report until he mentioned it in his testimony on cross-examination and that from her review of Detective McCue's report detailing Sergeant Duncan's participation in the case, she had no reason to believe Sergeant Duncan had created an additional report. Moreover, when she spoke to Sergeant Duncan on the day of trial, he did not mention he prepared a report. Detective Gerlach, the lead detective on the case, testified he first learned of Sergeant Duncan's report during that officer's testimony at the first trial, and believed that Sergeant Duncan had conveyed all the information he had to Detective McCue, who prepared a report summarizing Sergeant Duncan's observations. The trial court found ADA Robb believed she had possessed all the reports in this case, reasonably concluded no other report existed given the thoroughness of Detective McCue's report, and only learned of Sergeant Duncan's report during his trial testimony. Plainly, the prosecutor's conduct did not constitute overreaching or the attempt to subvert the judicial process, and the trial court properly decline to bar retrial on double jeopardy grounds. *See Krista*, 271 A.3d at 475; *King*, 271 A.3d at 450.

Green's third issue asserts the evidence was insufficient to establish two convictions for possession of firearms by person prohibited or, alternatively, he was twice convicted of the same offense in violation of double jeopardy.

The crime of possession of a firearm by a prohibited person is committed where a person possesses a firearm despite having a disqualifying conviction.

*See* 18 Pa.C.S.A. § 6105. Possession is ongoing conduct that continues as long as a person is in unlawful possession of a firearm. *See Commonwealth v. Gross*, 101 A.3d 28, 34 n.5 (Pa. 2014). A conviction violates double jeopardy where a person is convicted twice for the same offense. *See Commonwealth v. Hill*, 238 A.3d 399, 409 (Pa. 2020).

Green asserts, and the record does indicate, the Commonwealth argued the gun he discarded immediately before his arrest was, in fact, the same gun he used to shoot the victim four days earlier. *See* Green's Brief at 43. He asserts that even viewed in the light most favorable to the Commonwealth, the evidence demonstrates he continuously possessed the gun at issue and section 6105 does not require proof of intent beyond mere possession, and he could not properly be convicted of two offenses for a single act. *See* Green's Brief at 43-49, citing *Commonwealth v. Woods*, 710 A.2d 626, 631-32 (Pa. Super. 1988) (reversing multiple firearms possession sentences where the appellant shot one person and then shot at another person minutes later with the same gun). Alternatively, Green asserts he was punished twice for the same crime in violation of double jeopardy. *See* Green's Brief at 49-51 (distinguishing *Commonwealth v. Andrews*, 768 A.2d 309 (Pa. 2001), because it involved PIC and conspiracy convictions).

The trial court distinguished *Woods* because it involved separate convictions for using a firearm and possessing the firearm within a brief time frame on a single day, whereas Green was convicted of using the firearm in

- 18 -

the shooting here and controlling it in a separate encounter four days later with police, so even if the possession was continuous, Green committed separate offenses. **See** Trial Court Opinion, 10/9/24, at 10-11.

In **Andrews**, the appellant committed a gunpoint robbery on one day and unrelated gunpoint robberies the next day. Andrews raised sufficiency and double jeopardy challenges to his receipt of multiple convictions for possession of an instrument of crime ("PIC") asserting his gun possession was a single, continuous event. **See Andrews**, 768 A.2d at 312-13. The Supreme Court noted Andrews was convicted of conspiracy and determined the jury could properly have found he manifested a separate intent to use the gun criminally as part of each conspiratorial agreement.

The Commonwealth asserts under the circumstances of this case, Green's claim that his gun possession was a single, continuous offense should be regarded as a factual defense he failed to present below. **See** Commonwealth's Brief at 36. It further asserts Green's two convictions were separate in time, date, location, and factual circumstances and constituted multiple offenses. **See id**. at 37.

We do not agree with the Commonwealth's theory that Green had the burden to show his possession of the firearm was continuous to escape liability for two separate convictions for person not to possess a firearm. Additionally, we agree with Green that section 6105 is a possessory offense and that **Andrews** is distinguishable because it was a different charge and the jury in

- 19 -

that case found a separate intent to employ the firearm criminally as part of each conspiratorial agreement.

We recognize this is a close call legally and factually and there is no controlling precedent on point. We further agree with the Commonwealth that despite the continuous nature of gun possession, the passage of time is certainly a factor to be considered in determining whether such possession was discontinuous, warranting distinct and additional counts. Here, however, the manner in which the Commonwealth presented and argued this case, undermines its assertion that Green's possession was discontinuous based solely on the four days between the shooting and the car stop and subsequent flight.

To that end, we note the Commonwealth consolidated the cases together into a single prosecution, and presented evidence to link the gun found in Green's possession four days after the shooting with the shell casings found at the scene. Significantly, the Commonwealth presented a ballistic expert's testimony that unequivocally linked the gun to the previous shooting. In essence, as a matter of procedure and proof, the theory the Commonwealth presented to the jury that linked Green's possession of the gun at both crime scenes showed continual possession. Because the Commonwealth consolidated the cases and used the later gun possession to prove Green's possession and use of the same gun four days earlier, the inescapable inference it presented to the jury was that Green continually possessed the

gun. Accordingly, as a matter of sufficiency, not constitutional law, we vacate Green's second section 6105 conviction. In light of this disposition the trial court's overall sentencing scheme may be disturbed. Thus, we vacate Green's sentences and remand for resentencing consistent with this memorandum. *See Commonwealth v. Thur*, 906 A.2d 552, 569-70 (Pa. Super. 2006).

Green's final issue asserts his sentence of nineteen years and one-month to thirty-eight years and four months of imprisonment pursuant to 18 Pa.C.S.A. § 1102(c) exceeds the statutory maximum and is illegal because the jury did not determine his actions resulted in serious bodily injury to A.B. *See* Green's Brief at 51-52. Green also acknowledges that in *Commonwealth v. Cruz*, 320 A.3d 1257 (Pa. Super. 2024) (*en banc*), this Court held we may conduct a harmless error analysis where a trial court violates *Apprendi*[12] by imposing an enhanced sentence without a factual finding by a jury. *See* Green's Brief at 54. Green also contends he was charged with attempted murder but convicted of attempted murder causing serious bodily injury, which he claims is incompatible with Pennsylvania Supreme Court precedent and the Sixth Amendment. *See id*. at 57-58.

Without citing *Cruz*, the trial court held Green's sentence was not illegal. *See* Trial Court Opinion, 10/9/24, at 14.

---

[12] *See Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The Commonwealth asserts Green was charged with, and convicted of, aggravated assault for attempting to cause or causing serious bodily injury, and it cannot be disputed that A.B. suffered serious bodily injury as a result of being shot eight times. The Commonwealth also notes Green was convicted of aggravated assault - causing serious bodily injury, having been instructed by the trial court about what constitutes serious bodily injury. **See** Commonwealth's Brief at 39-41. Finally, it asserts we held in **Cruz** an **Apprendi** violation is subject to a harmless error analysis, we are bound by the *en banc* decision in **Cruz**, and the victim clearly suffered serious bodily injury. **See** Commonwealth's Brief at 41-42.

In **Cruz**, the defendant was charged with, *inter alia*, attempted murder and aggravated assault because of a stabbing he facilitated by physically restraining a man to allow a conspirator to stab him. Cruz contended his enhanced sentence for attempted murder was illegal under **Apprendi** because although the court charged the jury regarding serious bodily injury for the purposes of aggravated assault, it did give a similar charge concerning attempted murder. This Court held the error was harmless because the jury was charged about serious bodily injury (albeit for a different crime), and it could not be disputed the victim suffered serious bodily injury.

We are bound by the *en banc* Court's determination in **Cru**z that harmless error applies to **Apprendi** violations. Here, as in **Cruz**, the trial court charged the jury about the nature of serious bodily injury for the

purposes of aggravated assault, *see* N.T., 7/17/23, 95-97. We conclude the trial court's failure to define serious bodily injury when specifically discussing attempted murder was harmless error where the court defined serious bodily injury in discussing aggravated assault and there can be no dispute the victim, who was shot eight times, suffered serious bodily injury. Accordingly, *Cruz* compels the denial of relief on Green's claim.

All convictions except Green's second conviction for possession of firearm by persons prohibited affirmed. Second conviction for possession of firearms by persons prohibited reversed. Sentences vacated and case remanded for resentencing in accordance with this decision.

Affirmed in part, reversed in part. Sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/23/2026